1
2
3

Darren J. Quinn (149679)
LAW OFFICES OF DARREN J. QUINN
12702 Via Cortina, Suite 105
Del Mar, CA 92014
Tel: (858) 509-9401

4

*Attorneys for Plaintiff Steven M. Gardner*

5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

10

STEVEN M. GARDNER, an individual,

CASE NO. **'14 CV0792 JAH BLM**

11

Plaintiff,

12

v.

**COMPLAINT**

13
14

CAFEPRESS INC., a Delaware corporation, and PRIDEANDMORE a person or business,

**DEMAND FOR A JURY TRIAL**

15

Defendants.

16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT

Plaintiff makes the following allegations on information and belief:

## INTRODUCTION

1.     This is an action for copyright infringement under the Copyright Act of the United States, 17 U.S.C. §§101 *et seq.*

2.     Plaintiff is the creator and owner of copyrighted graphic designs. Defendants infringed one or more of plaintiff's copyrights.  Plaintiff seeks all relief available to him for copyright infringement under the Copyright Act of the United States, 17 U.S.C. §§101 *et seq.*

3.     Additionally, defendants violated 17 U.S.C. §1202 regarding removal, alteration and/or falsification of copyright management information (such as the name of the author and/or copyright owner).  Plaintiff seeks civil remedies pursuant to 17 U.S.C. §1203(b) including an injunction, impounding of any device or product involved in a violation of 17 U.S.C. §1202 for remedial modification or destruction, damages, costs and attorney fees.

## JURISDICTION AND VENUE

4.     This court has jurisdiction of this action under federal copyright laws, 28 U.S.C. §1331 and §1338(a).

5.     Venue is proper in this district under 28 U.S.C. §1400(a) because defendants or their agents reside or may be found in this district.  Defendants advertise, market and/or sell goods in this district via the Internet or directly. Defendants' wrongful conduct caused harm in this district, which harm defendants knew and/or intended would occur in this district.

## THE PARTIES

6.     Plaintiff STEVEN M. GARDNER ("GARDNER") is an individual who resides in the Southern District of California.  Plaintiff is the owner of the copyrights that were infringed by the defendants.  Plaintiff is also the owner of works that contained copyright management information such as his name.

7.     Defendant CAFEPRESS INC. ("CAFEPRESS") is a Delaware corporation.

8.     On information and belief, defendant PRIDEANDMORE is person or business.  Advertisements for products that infringe plaintiff's copyrights sold on www.cafepress.com contain a section that states:

DESIGNED BY



PrideandMore

9.     On information and belief, PRIDEANDMORE has no relationship or affiliation with Lakin Southall who infringed plaintiff's "Harmony of Wolves" (VA-851-029) copyright.   On information and belief, PRIDEANDMORE's infringement of plaintiff's "Harmony of Wolves" (VA-851-029) copyright is completely separate and distinct from any infringement by CAFEPRESS user Lakin Southall or any infringement by CAFEPRESS from use of an infringing image provided by Lakin Southall.  On information and belief, PRIDEANDMORE's infringement of plaintiff's "Harmony of Wolves" (VA-851-029) copyright was not a continuation of a series of ongoing infringements by Lakin Southall.

**FACTUAL BACKGROUND**

10.     Defendant CAFEPRESS states on its website: "CafePress prints most orders at our state-of-the-art production facility in Louisville, Kentucky. Measuring more than three football fields, this facility has hundreds of state-of-the-art printing presses perfectly matched for the 250+ products we print."

11.     Defendant CAFEPRESS also states in its website: "CafePress.com

1  uses many state of the art technologies to produce the items we sell."

2      12.    Defendant CAFEPRESS's 2012 Form 10K filed with the Securities

3  Exchange Commission states: "We have built a state-of-the-art facility in

4  Louisville, Kentucky with innovative technology and manufacturing processes

5  that enable us to provide high-quality customized products that are individually

6  built to order at mass scale. Our proprietary, vertically integrated processes enable

7  us to produce a broad range of merchandise efficiently, cost effectively and

8  quickly."

9      13.    Defendant CAFEPRESS advertised and sold products through its

10  CafePress Marketplace which consists of the goods sold on its

11  www.cafepress.com website.  Defendant's 2012 Form 10K states: "A significant

12  proportion of our revenue has been derived from the online sale of user-designed

13  products through our marketplace."

14      14.    Defendant CAFEPRESS exercises full control over the products

15  defendant determines to sell on its CafePress Marketplace.  Defendant

16  CAFEPRESS stated on its website that:

17          a.    Defendant CAFEPRESS determines the retail price.

18          b.    "CafePress in its sole and absolute discretion will determine

19          what designs and products will be available through the CafePress

20          Marketplace."

21          c.    "CafePress may automatically modify your designs (e.g.,

22          cleaning up JPG artifacting, adjusting colors for different printers and

23          products, and adjusting design placement on products)."

24          d.    CAFEPRESS pays a royalty to the person who uploaded the

25          image to CAFEPRESS.

26      15.    Defendant CAFEPRESS also sold products through a mobile phone

27  application that allows smart phone users to access the CafePress Marketplace at

28

defendant's cafepress.com website.

16.    Defendant CAFEPRESS also sells products on the Amazon.com website through a "feed." Defendant CAFEPRESS's marketing department determines what products will be sold through Amazon.  The Amazon.com website indicates that defendant has a CafePress Storefront with at least 10,192 ratings from buyers.

17.    Defendant CAFEPRESS also sold products as a seller on eBay.com. The eBay.com website shows that defendant was the seller on eBay with at least 37,163 transactions.

18.    On information and belief, the vast majority defendant CAFEPRESS's infringing sales in this action were through its Marketplace, mobile phone application, or "feeds" where CAFEPRESS exercised full control over the products sold.

19.    On information and belief, only a small percentage of infringing product sales in this action was through defendant CAFEPRESS's "Shop" or "Premium Shop" sales channel.

**FIRST CAUSE OF ACTION**
**(Against Defendants)**
**(Copyright Infringement)**

20.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 18 of this Complaint.

21.    Plaintiff has complied in all respects with the Copyright Act of the United States and all other laws governing copyright, and secured the exclusive rights and privileges in and to the copyrights at issue in this action.

22.    The United States Copyright Office has issued U.S. Copyright Registration for "Harmony of Wolves" (VA-851-029).

23.    On information and belief, defendants' infringement is not limited to the copyrighted design listed above.  Plaintiff will identify such additional infringing designs after discovery.

24.    Plaintiff has been and still is the sole proprietor of all rights, title, and interest in his copyrights.  Defendants' use, production, distribution, sale, copying and/or reproduction of plaintiff's copyrights is and has been without the consent and/or authorization of plaintiff. The activities of defendants complained of herein constitute willful and intentional infringement of plaintiff's copyrights and are in total disregard of plaintiff's rights.

25.    On information and belief, defendants have infringed plaintiff's copyrights by,  *inter alia*: (1) distributing various marketing materials containing designs identical to or substantially similar to plaintiff's copyrights; (2) selling or offering for sale various products containing designs identical or substantially similar to plaintiff's copyrights; (3) copying plaintiff's copyrights; (4) creating derivative works from plaintiff's copyrights; and (5) reproducing plaintiff's copyrights.

26.    Defendants advertised products or services using images containing design elements probatively and substantially similar to design elements contained in one or more of plaintiff's copyrighted designs.

27.     Defendants produced or materially assisted in the production of one or more different products containing design elements probatively and substantially similar to design elements contained in one or more of plaintiff's copyrighted designs.

28.     Defendants sold or materially assisted in the sale production of one or more different products containing design elements probatively and substantially similar to design elements contained in one or more of plaintiff's copyrighted designs.

29.     On information and belief, there is a business practice of infringement by defendants.  On information and belief, defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to acting with willful blindness and/or reckless disregard.

30.     Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of defendants in an amount thus far not determined.

31.     As result of such infringement, plaintiff seeks all remedies available to it, pursuant to the Copyright Act, including, but not limited to:

        a.     Seizure, impoundment and/or destruction of all of the products used to perpetrate the infringing acts pursuant to 17 U.S.C. §503.  On information and belief, defendants and/or third parties have

documents reflecting the total number of infringing goods

manufactured, distributed, sold and still remaining in inventory

including, but not limited to, production reports, shipping invoices,

bills of lading, sales invoices, and inventory-on-hand reports.  On

information and belief, these documents reflect the style/item

numbers for defendants' infringing products and designs.  Defendants

and/or third parties have sales and marketing materials reflecting the

images of infringing products/designs and associated style/item

numbers including sales catalogs.

b.      Appropriate injunctive relief;

c.      Actual damages suffered by plaintiff as a result of the

infringement pursuant to 17 U.S.C. §504 (b).   One measure of actual

damages is the fair market value of a license covering the defendants'

infringing use of plaintiff's designs.  To the extent applicable,

plaintiff seeks an additional award of two times the amount of the

license fee that the proprietor of the establishment concerned should

have paid the plaintiff for such infringing use during the preceding

period of up to 3 years pursuant to 17 U.S.C. §504(b)

d.      Any profits of defendants that are attributable to the

infringement and are not taken into account in computing the actual

damages pursuant to 17 U.S.C. §504 (b).  On information and belief, defendants and/or third parties have  documents that reflect the profits of defendants that are attributable to the infringement including sales invoices for the infringing designs and all documents showing defendants' direct costs of production.

e.      Statutory damages (at plaintiff's election) instead of actual damages and profits, for all infringements involved in the action, with respect to any one work, for which any one defendant is liable individually, or for which defendant is liable jointly and severally with another, in a sum of not less than $750 or more than $30,000 as the court considers just pursuant to 17 U.S. C. §504(c)(1).  To the extent the court finds that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $ 150,000 per violation, pursuant to 17 U.S.C. §504(c)(2);

f.      Attorney fees;

g.      A trial by jury on all claims so triable; and

h.      Such other and further relief as may be proper.

**SECOND CAUSE OF ACTION**
**(Against Defendants)**
**(Violation of 17 U.S.C. §1202)**

32.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 8 of this Complaint.

33.     All copyrighted images of plaintiff at issue in this lawsuit contained "copyright management information" ("CMI") as that terms is defined in 17 U.S.C. §1202(c).   As adopted, 17 U.S.C. §1202(c) provides:

> Definition. As used in this section, the term "copyright management information" means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:
> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
> (2) The name of, and other identifying information about, the author of a work.
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
> (4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.
> (5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.
> (6) Terms and conditions for use of the work.
> (7) Identifying numbers or symbols referring to such information or links to such information.
> (8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

34.     17 U.S.C. § 1202 was first considered by Congress in 1998 as part of legislation designed to implement the World Intellectual Property Organization (WIPO) Copyright Treaty (CT) and Performances and Phonograms Treaty (WPPT).

35.     The text of Article 12 of the CT and Article 19 of the WPPT are similar.  Both require contracting parties to provide "adequate and effective legal remedies against any person performing any of the following acts … having reasonable grounds to know, that it will induce, enable, facilitate or conceal an infringement …(i) to remove or alter any electronic rights management information without authority."

36.     Article 12 of the CT also requires adoption of "legal remedies against any person performing any of the following acts … having reasonable grounds to know, that it will induce, enable, facilitate or conceal an infringement … (ii) to distribute, import for distribution, broadcast or communicate to the public, without authority, works or copies of works knowing that electronic rights management information has been removed or altered without authority."

37.     Both the WPPT and CT define "rights management information" as "information which identifies the work, the author of the work, the owner of any right in the work, or information about the terms and conditions of use of the work, and any numbers or codes that represent such information, when any of

these items of information is attached to a copy of a work or appears in connection with the communication of a work to the public."

38.     Several bills with different names were introduced in the House of Representatives and the Senate in 1997 to implement WPPT and CT.  Reports were issued and hearings were held in both houses of Congress in 1998. The different bills were consolidated and renamed the "Digital Millennium Copyright Act of 1998" (hereinafter "DMCA"). On May 11, 1998, the Senate Judiciary Committee issued a Report on the DMCA (Sen. Rpt. 105-190), which further described the intent of the prohibitions being adopted in Section 1202 of the DMCA.

> Copyright Management Information (CMI) is an important element in establishing an efficient Internet marketplace in copyrighted works free from governmental regulation. Such information will assist in tracking and monitoring uses of copyrighted works, as well as licensing of rights and indicating attribution, creation and ownership.

> Under the bill, CMI includes such items as the title of the work, the author, the copyright owner, and in some instances, the writer, performer, and director. CMI need not be in digital form, but CMI in digital form is expressly included. It is important to note that the DMCA does not require CMI, but if CMI is provided, the bill protects it from falsification, removal or alteration. Information that is not defined as CMI under the bill would not be protected by these provisions, although its removal or falsification might be protected under other laws, such as unfair trade. The definition of CMI may be expanded by regulation prescribed by the Register of Copyrights.

39.     The intentions of the Senate regarding CMI were expressed further in the Report's discussion of the language proposed for Section 1202.

> This section does not mandate the use of CMI, nor does it prescribe the choice of any particular type of CMI for those who do use it. It merely protects the integrity of CMI if a party chooses to use it in connection with a copyrighted work by prohibiting its deliberate deletion or alteration. Furthermore, this section imposes liability for specified acts.

40.     The DMCA was debated on the Senate floor on May 14, 1998. During debate, Sen. Thompson noted:

> New technology creates exciting opportunities for intellectual property, but the digital environment also poses threats to this form of property. Unscrupulous copyright violators can use the Internet to more widely distribute copyrighted material without permission. To maintain fair compensation to the owners of intellectual property, a regime for copyright protection in the digital age must be created. Technology to protect access to copyrighted work must be safeguarded. Copyright management information that identifies the copyright owner and the terms and conditions of use of the copyrighted material must be secured.

Senate Floor Debate, Cong. Rec., S.4892 (May 14, 1998).

41.     A recurring theme throughout the debates of the DMCA is the protection the law provides against piracy. In statements and remarks before both House and Senate, members of Congress repeatedly extolled the benefits of the DMCA for the protections against piracy it would provide. The protection of CMI integrity, and the prohibition against alteration, removal or falsification of CMI, implements Congress' goal of preventing piracy.

42.    One important purpose of CMI is to identify digital images as the works of plaintiff. The Internet has made it possible for images to be copied and distributed worldwide without detection. As a result, copyright infringement on the Internet has become a serious problem for professional artists

43.    When CMI is removed, altered or falsified, plaintiff may find it difficult or impossible to enforce his rights under the Copyright Act.  For instance, plaintiff may find it more difficult or impossible to prove that his works were copied or used without permission when CMI has been removed, altered or falsified.  Additionally, subsequent infringers may claim that their copyright infringement was innocent, because the CMI on the infringing copy was removed, altered or falsified.  Further, it may be difficult or impossible for a copyright owner to trace an infringer's profits from an infringing copy that has CMI removed, altered or falsified.

44.    Digital images may contain metadata information identifying the work, such as information set forth in a notice of copyright. This metadata may include the name of the author, the name of the copyright holder (who might be different from the author who created a work), the terms and conditions for use, or other information related to the work.

45.    The individual items of metadata information are called "tags." A wide variety of tags can be included in metadata.

46.     Embedding metadata in image files is a standard technical measure to identify and protect copyrighted works.

47.     Image metadata was developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process.  The  metadata does not impose substantial costs on Internet service providers or substantial burdens on their systems or networks.

48.     Plaintiff holds the copyright in one or more images containing copyright management information.

49.     On information and belief, without the authority of plaintiff, defendants intentionally removed or altered CMI, distributed CMI knowing that the CMI was removed or altered, distributed copies of images knowing that that CMI has been removed or altered in violation of 17 U.S.C. §1202(b).

50.     Defendants never contacted plaintiff to obtain "authority" to remove or alter plaintiff's CMI within the meaning of 17 U.S.C. §1202(b).

51.     On information and belief, defendants intentionally removed or altered copyright management information from images that are owned by plaintiff in violation of 17 U.S.C. §1202(b)(1).

52.     On information and belief, defendants distributed copyright management information knowing that the copyright management information had been removed or altered without authority of the copyright owner or the law with

respect to images that are owned by plaintiff in violation of 17 U.S.C. §1202(b)(2).

53. On information and belief, defendants distributed copies of works knowing that the copyright management information had been removed or altered without authority of the copyright owner or the law with respect to images that are owned by plaintiff in violation of 17 U.S.C. §1202(b)(3).

54. Defendants removed or altered CMI from images that are owned by plaintiff knowing that it will induce, enable, facilitate or conceal infringement of copyright in violation of 17 U.S.C. §1202(b).

55. Defendants removed or altered CMI from digital images that are owned by plaintiff after having reasonable grounds to know that it will induce, enable, facilitate or conceal infringement of copyright in violation of 17 U.S.C. §1202(b).

56. Defendants knowingly provided copyright management information that is false with respect to images that are owned by plaintiff in violation of 17 U.S.C. §1202(a)(1).

57. Defendants knowingly distributed copyright management information that is false with respect to images that are owned by plaintiff within the meaning of 17 U.S.C. §1202(a)(2).

58.     Defendants provided or distributed false CMI from images with respect to images that are owned by plaintiff with the intent to induce, enable, facilitate, or conceal infringement in violation of 17 U.S.C. §1202(a).

59.     The profits attributable to defendants' violation of 17 U.S.C. §1202 include the revenue from sales of product containing images where plaintiff's CMI has been removed, altered and/or falsified and revenue from advertisements containing images where plaintiff's CMI has been removed, altered and/or falsified.

60.     Plaintiff's images add significant value to defendants' products and advertising.

61.     Defendants did not request permission of plaintiff to use his images for products or advertising.

62.     Defendant CAFEPRESS's 2013 revenues were over $245 million. Defendant CAFEPRSS is extremely sophisticated with respect to intellectual property matters.  Defendant CAFEPRESS's 2013 Annual Report states, in part:

> The nature of our user-generated content business models present
> legal challenges to our business and operations. . . We likewise must
> monitor our e-commerce platform for potential and alleged
> intellectual property infringement and violation of rights of privacy
> and publicity that can vary widely between countries and regions,
> and, accordingly, we frequently must navigate the legal and
> regulatory schemes of numerous countries outside the United States.

* * *

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Numerous laws and regulatory schemes have been adopted at the national and state level in the United States, and in some cases internationally, have a direct impact on our business and operations. These laws include the following: . . .

• The Digital Millennium Copyright Act, which provides relief for claims of infringement as it relates to circumvention of copyright protected technologies, but also includes a safe harbor intended to reduce the liability of online service providers for listing or linking to third-party websites that include materials that infringe copyrights or other rights of others.

63.     Unless enjoined from violating 17 U.S.C. §1202, plaintiff will suffer irreparable harm by depriving him of the right to identify and control the reproduction and/or distribution of his copyrighted works, to receive licensing revenue, and to pursue copyright infringement remedies.  The balance of hardships tips in favor of plaintiff because defendants will not be damaged if they are required to comply with 17 U.S.C. §1202.  Plaintiff is therefore entitled to an injunction barring defendants from violating 17 U.S.C. §1202 and impounding any device or product that is in the custody or control of defendants and that the court has reasonable cause to believe was involved in a violation of 17 U.S.C. §1202.

64.     WHEREFORE, plaintiff prays for relief and that judgment be entered against defendants as follows:

a.     Temporary and permanent injunctions to prevent or restrain a violation of 17 U.S.C. §1202 pursuant to 17 U.S.C. §1203(b)(1);

1

2

3       b.      Order the impounding any device or product that is in the

4   custody or control of the alleged violator and that the court has

5   reasonable cause to believe was involved in a violation of 17 U.S.C.

6   §1202 pursuant to 17 U.S.C. §1203(b)(2);

7       c.      Damages pursuant to 17 U.S.C. §1203(a)(3) and (c) including

8   actual damages;

9       d.      Defendants' profits attributable to the violation of 17 U.S.C.

10  §1202;

11      e.      At plaintiff's election, statutory damages in the sum of not less

12  than $2,500 or more than $25,000 pursuant to 17 U.S.C.

13  §1203(c)(3)(B);

14      f.      Cost pursuant to 17 U.S.C. §1203(b)(4);

15      g.      Attorney fees pursuant to 17 U.S.C. §1203(b)(5);

16      h.      As part of a final judgment or decree finding a violation, order

17  the remedial modification or the destruction of any device or product

18  involved in the violation that is in the custody or control of the

19  violator or has been impounded pursuant to 17 U.S.C. §1203(b)(6);

20      i.      Declaratory relief;

21      j.      A trial by jury on all claims so triable; and

22      k.      Such other and further relief as may be proper.

Dated: April 1, 2014

LAW OFFICES OF DARREN J. QUINN
DARREN J. QUINN

_s/s Darren J. Quinn_
Darren J. Quinn

12702 Via Cortina, Suite 105
Del Mar, CA 92014
Telephone: (858) 509-9401

*Attorneys for Plaintiff Steven M. Gardner*

1

## **DEMAND FOR A JURY TRIAL**

2

3

Plaintiff demands a trial by jury on all causes of action so triable.

4

Dated: April 1, 2014

5

Respectfully submitted,

6

LAW OFFICES OF DARREN J. QUINN

7

DARREN J. QUINN

8

9

_s/s/ Darren J. Quinn_
Darren J. Quinn

10

11

12702 Via Cortina, Suite 105

12

Del Mar, CA 92014
Telephone: (858) 509-9401

13

14

*Attorneys for Plaintiff Steven M. Gardner*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| GARDNER, STEVEN M. | CAFEPRESS INC, and PRIDEANDMORE |

**(b)** County of Residence of First Listed Plaintiff   San Diego
    *(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   _____
    *(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
       THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Darren J. Quinn, LAW OFFICES OF DARREN J. QUINN, 12702 Via Cortina, Suite 105, Del Mar, CA 92014 858-509-9401

Attorneys *(If Known)*

'14CV0792 JAH BLM

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
   Plaintiff

☒ 3 Federal Question
   *(U.S. Government Not a Party)*

☐ 2 U.S. Government
   Defendant

☐ 4 Diversity
   *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☒ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
   Proceeding
☐ 2 Removed from
   State Court
☐ 3 Remanded from
   Appellate Court
☐ 4 Reinstated or
   Reopened
☐ 5 Transferred from
   Another District
   *(specify)*
☐ 6 Multidistrict
   Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
17 U.S.C. §101 et seq. and §1202
Brief description of cause:
copyright infringement and removal, alteration and/or falsification of copyright management information

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER RULE 23, F.R.Cv.P.

DEMAND $
150,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE  Gonzalo P. Curiel
DOCKET NUMBER  13CV1108

DATE
04/01/2014

SIGNATURE OF ATTORNEY OF RECORD
s/s Darren J. Quinn

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____